# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-666V

| | |
|---|---|
| ANITA KLIEBERT,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 25, 2025 |

*Ramon Rodriguez, III*, Siri & Glimstad LLP, Richmond, VA, for Petitioner.

*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for Respondent.

### Fact Finding Dismissing Table Claim and Order to Show Cause[1]

On January 12, 2021, Anita Kliebert filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 5, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find Petitioner has not established that she suffered a Table Claim. And because this same set of facts likely precludes any causation-in-fact claim, the matter is appropriately dismissed in its entirety, unless Petitioner can show cause why a non-Table claim would be tenable under the circumstances.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

On January 16, 2024, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 66. Respondent argues that onset of Petitioner's shoulder pain was not within 48 hours of vaccination. *Id.* at 6-10. On February May 27, 2024, Petitioner filed a motion for a ruling on the record in favor of finding entitlement. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 72. Respondent opposed the motion on June 26, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 73. Petitioner did not file a reply. The matter is ripe for resolution.

## II. Petitioner's Medical Records

Petitioner received the flu vaccine in her left shoulder on September 5, 2018. Ex. 16 at 2. For more than two months thereafter, Petitioner attended medical appointments and contacted health care providers. These include a request for prescription medication refills related to gastrointestinal condition (Ex. 7 at 1013-18), a visit with her gynecologist (Ex. 3 at 23), communication related to osteopenia (Ex. 7 at 1026), communication relating to measles vaccines prior to international travel (Ex. 7 at 1050), and a mammogram (Ex. 7 at 1041). At no time in this period did she report shoulder pain (although some of these treatment events did not reflect proper opportunities to do so).

On November 13, 2018, Petitioner saw her primary care provider reporting intermittent shoulder pain "for a few months." Ex. 7 at 1060. Her shoulder showed tenderness and pain with resisted abduction. *Id.* at 1063. Petitioner was diagnosed with a suspected shoulder sprain and referred to physical therapy. *Id.* at 1064.

Petitioner began physical therapy on November 15, 2018. Ex. 23 at 44. She now reported that her pain began approximately six months prior (meaning in May), and had progressively worsened. She also noticed her left arm was weaker than her right while at the gym in February. *Id.* at 45. Petitioner did not attend additional physical therapy.

Four months later, on March 18, 2019, Petitioner saw an orthopedist with left shoulder complaints that she said began in August 2018 (again, prior to vaccination). Ex. 17 at 116-17. An examination showed limited range of motion, and she was referred to "aggressive" physical therapy. *Id.* at 118. Petitioner began physical therapy immediately thereafter. Ex. 18 at 4. She noted her soreness and weakness began in the summer of

2

2018 and progressively worsened. *Id.* She also showed reduced range of motion and strength in her left shoulder. *Id.* Between March 18 and June 13, 2019, she attended thirty physical therapy sessions. *Id.* at 4-37.

Petitioner returned to the orthopedist on April 15, 2019, with reports of significant pain. Ex. 17 at 114-15. She was diagnosed with persistent frozen shoulder. *Id.* at 116. A subsequent MRI showed acromioclavicular osteoarthritis, tendinosis, a partial low-grade tear, and a labral tear. *Id* at 16. Petitioner ultimately underwent manipulation and arthroscopic surgery of her left shoulder on November 13, 2019. Ex. 17 at 100-01. She then attended twenty physical therapy sessions, being discharged on December 31, 2019. Ex. 20 at 5-45.

At her second follow-up with the orthopedist on December 21, 2019, Petitioner stated that "[s]he thinks that her symptoms began about the time that she had a flu shot in her shoulder." Ex. 17 at 109. This was the first time any vaccine association was proposed – and it occurred more than a year after vaccination. The treater noted that he "certainly witnessed this in other patients in the past, and that may have been the cause." *Id.*

Petitioner has submitted two declarations in support of the Petition. Ex. 1, 2. She states that her September 2018 vaccination hurt when administered, and that over the following weeks she continued to experience pain and gradually began to lose mobility. *Id.* at 1-2. She also reported pain immediately following her vaccination to Dr. Plaisance, Dr. Plauche, and her physical therapist, however it was not noted in the records. *Id.* at 2, 3.

Richard Kliebert, Petitioner's spouse, submitted a declaration in this matter. Ex. 2. He states that she reported shoulder pain on September 5, 2018, after receiving the flu vaccine, and continued to hurt over the next several weeks. Ex. 2 at 1. He assisted her in icing and heating the shoulder for pain, and with helping her put on her jacket when asked. *Id.* at 1.

Marc and Matthew Kliebert, Petitioner's sons, submitted declarations in this matter as well. Ex. 64, 65. They state that Petitioner complained of shoulder pain immediately after vaccination that worsened throughout the fall of 2018. Ex. 64 at 1; Ex. 65 at 1.

Connie Mitchell, Petitioner's friend, submitted a declaration in this matter. Ex. 66. She states that Petitioner complained of shoulder pain throughout September and October of 2018. *Id.* at 1-2. She also recalls Petitioner said "that the only thing that she

3

had done differently to her left arm was to have gotten a flu shot from Walgreens and that since then she had pain and worsening difficulty moving her left arm." *Id.* at 2.

Lori Pizzuto, Petitioner's neighbor, submitted a declaration in this matter. Ex. 67. She states that after Petitioner receiving her flu shot on September 5, 2018, she told Ms. Pizzuto "that the shot really hurt her arm." *Id.* at 1.

### III.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

4

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A.  Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that Petitioner cannot meet the SIRVA requirement of pain onset within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B).

The most contemporary records variously place onset of Petitioner's shoulder pain in either February, May, August, or September of 2018. Petitioner first reported shoulder

pain on November 13, 2018, ten weeks after her September 5, 2018 vaccination, when she stated that she had shoulder pain "for a few months". Ex. 7 at 1060. She next reported shoulder pain to her physical therapist on November 15, 2018, but now stated that it began *six months earlier*. Ex. 23 at 44. This would place onset of her pain in May 2018, months before her vaccination. She also stated that she began to have shoulder problems in February 2018, nearly six months before her September vaccination. *Id.* at 45. Additionally, in May 2019 she stated her shoulder pain began in either August 2018 or generally in the summer of 2018, again prior to her vaccination. Ex. 17 at 116-17; Ex. 18 at 4. Petitioner attempts to explain away this record evidence by stating in her affidavits that she reported immediate pain following her vaccination to at least three medical providers, but that they appear to have failed to note her statements in the records. Ex. 1 at 1-2. But this gainsaying of these contemporaneous records is not persuasive.

There is also the fact that Petitioner delayed treatment for her shoulder issues (despite seeing any number of treaters in that initial gap period) – and greatly delayed even reporting a vaccine-associated onset. It was not until December 2019, fifteen months after her flu vaccine, that she ever reported that her symptoms began with vaccination. Ex. 17 at 109. Given Petitioner's vague and inconsistent onset reports and failure to link the vaccination to onset of her pain, I find there is not preponderant evidence that onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### B.     No Causation Claim is Tenable Given the Evidence

In some cases, a claimant's failure to meet the onset requirement for a Table SIRVA does not preclude a causation-in-fact claim on the basis of the same evidence. Onset that occurs a little outside the two-day timeframe can sometimes be linked to an alternative injury. Or a claimant might be able to show a pre-vaccination onset reflected an injury that the vaccine worsened.

Here, however, the record preponderates in favor of the conclusion that Petitioner's shoulder pain most likely began *well* before vaccination. *See* Ex. 23 at 44 (record describing shoulder pain beginning in May and weakness in February of 2018); Ex. 17 at 116-17 (record stating shoulder pain began in either August of 2018 or generally that summer). The treatment evidence from mid-November 2018 to mid-April 2019 *all* feature Petitioner reporting onset before vaccination, and at an unspecified time as well. She also did not inform treaters until 14 months post-vaccination that she associated vaccination with her injury, and certainly did not do so when she first sought treatment in November 2018. All of these records are far more deserving of evidentiary weight than

6

declarations and witness statements prepared after the fact, or treatment records more attenuated temporally to vaccination.

Given these facts, Petitioner has not provided sufficient evidence to establish her shoulder pain was caused by her September 5, 2018, flu vaccine as the evidence indicates her pain started *before* her vaccination.

Petitioner shall therefore show cause why her claim should not be dismissed in its entirety. I will thereafter determine if this claim can continue. Failure to do so will result in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

## Conclusion

**Because Petitioner has failed to meet the QAI requirements for a Table SIRVA I must DISMISS her Table claim.**

**Additionally, Petitioner shall show cause why her causation-in-fact claim should not be dismissed. She shall file any additional evidence needed by no later than September 24, 2025.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master